UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| GREAT AMERICAN INSURANCE COMPANY, | ) |
|---|---|
| Plaintiff, | ) ) ) ) |
| v. | ) No. 3:24-cv-01309 ) ) |
| BIGGER DREAM, LLC D/B/A QNTM FIT LIFE; NIKKO GLASPER; JOHNNY WILKINS; 114 RE INVESTMENT LLC; NICHOEL RYNER; HONOR TJORNHOM; ANNA LEDUC; BAILEY PAYNE-JONES; CLAUDIA BARHORST; KATHERINE McCOOL; ALISON BROWN; MELANIE MILLER; DEANDRA STINSON; LINDSEY PLATT; and TANA WHITED, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION

In 2021 a group of female patrons at QNTM Fit Life, owned by Bigger Dream LLC d/b/a QNTM Fit Life ("Bigger Dream") learned that its trainer, Nikko Glasper, had stolen personal compromising pictures from their phones and surreptitiously photographed them while they were undressing. Amended Complaint at 1 (Doc. No. 9). The female victims filed multiple state court lawsuits against Glasper and Bigger Dream alleging a variety of tort claims. Glasper was also charged and pled guilty for his criminal conduct. When Glasper engaged in the alleged conduct, Plaintiff Great American Insurance Company ("Great American") had issued certain insurance policies to Bigger Dream. This lawsuit seeks a declaratory judgment of the scope of coverage for

1

certain insurance policies relative to the female victims' state lawsuits against Glasper and Bigger Dream.

Great American has filed a motion for summary judgment, (Doc. No. 30), asking this Court to declare the parties' rights and responsibilities under the insurance policies related to Glasper and Bigger Dream. Specifically, Great American seeks a declaration that the female victims' allegations constitute "abuse" as defined in Great American's insurance policies such that "the indemnity available for their claims against Bigger Dream is limited to the coverage afforded by the policy's Abuse or Molestation Coverage Form." (Doc. No. 30 at 1), which is limited to $100,000.00. As a matter of law, Great American contends that its Umbrella Policy, Commercial General Liability policy and Professional Liability Coverage Form have no application to the female victims' lawsuits. Amended Complaint Counts Three, Four and Five. (Doc. No. 9 at 17-20).

Bigger Dream, Wilkins, Glasper and the female patrons have filed cross-motions for summary judgment. (Doc. No. 33 at 1 n.1). They reason "if the Plaintiff's motion is denied, by definition, the Defendants' cross-motion should be granted." Id.

I. **Undisputed Material Facts**

The Court accepts and relies on the parties undisputed admitted material facts, (Doc. No. 32), to resolve the pending cross-motions for summary judgment.

### A. Nikko Glasper's conduct, victims, and conviction.

1. Nikko Glasper was a popular trainer at one of Nashville's top gyms, Bigger Dream LLC d/b/a QNTM Fit Life ("Bigger Dream").

2. In 2021, a group of female Bigger Dream members learned that Glasper had been copying intimate media from their phones while also, on some occasions, surreptitiously photographing them.

3. Mr. Glasper's female victims included Nichoel Ryner, Honor Tjornhom, Anna Leduc, Bailey Payne-Jones, Claudia Barhorst, Katherine McCool, Alison Brown, Melanie Miller, Deandra Stinson, Lindsey Platt, and Tana Whited (collectively, the "Underlying Claimants").

4. Glasper was arrested on October 6, 2021, and charged with 44

misdemeanor counts.

5. After more women came forward, Glasper's charges were increased on May 18, 2022, to 139 misdemeanor counts.

6. Among other things, Glasper was charged with violations of Tennessee Code § 39- 13-605, which states that it is a misdemeanor offense "for a person to knowingly photograph, or cause to be photographed, an individual without prior effective consent of the individual … if the photograph .. [w]ould offend or embarrass an ordinary person if the person appeared in the photograph; or … [i]s focused on the intimate area of the individual and would be considered offensive or embarrassing by the individual; and … [w]as taken for the purpose of sexual arousal or gratification of the defendant[.]"

7. On January 30, 2023, Glasper pleaded guilty to 18 counts of unauthorized copying of data and unlawful photography.

8. On March 23, 2023, Glasper was sentenced to 11 months and 29 days in prison, followed by three years of probation.

**B. The state-court lawsuits.**

9. The Underlying Claimants filed suit against Glasper and Bigger Dream in four separate lawsuits currently pending in Davidson County Circuit Court, Tennessee (collectively "Lawsuits").

10. In the Lawsuits, the Underlying Claimants assert a variety of claims against Glasper and Bigger Dream, all predicated on Glasper's offensive and humiliating theft of content from the Underlying Claimants' phones as well as his incidents of secretly photographing the Underlying Claimants.

11. For instance, Claimant Honor Tjornhom filed suit against Bigger Dream and Glasper, asserting claims of negligence and negligent infliction of emotional distress.

12. Tjornhom's Complaint emphasizes the humiliating nature of the claims, stating that Tjornhom suffered emotional distress, including worry, anxiety, fear, shame, humiliation, embarrassment, and anger, as a result of witnessing the unauthorized photography and data transfer.

13. Claimant Nichoel Ryner also sued Bigger Dream and Glasper for negligence and NIED, claiming that Glasper specifically viewed, copied, and sent private personal images of Ryner without her consent, causing her distress.

14. Similarly, Claimants Lindsey Platt and Tana Whited filed suit for invasion of privacy and negligence, alleging that the unknown and unwelcome filming and photographing of intimate images of the plaintiffs were highly objectionable and offensive.

15. And likewise, Claimants Anna Leduc, Bailey Payne-Jones, Claudia Barhorst, Katherine McCool, Alison Brown, Melanie Miller, and Deandra Stinson allege surreptitious photographing and videotaping, invasion of privacy, and inappropriate conduct by Glasper.

3

16. These Claimants describe Glasper's conduct as "shocking and disgusting," causing them great emotional distress and embarrassment.

### C. State-court discovery emphasizes that the Underlying Claimants' allegations and damages all arise from Glasper's abusive sexual conduct.

17. Omitted.

18. Kendall Magnan, for instance, joined Bigger Dream in September 2019, influenced by a billboard promoting Glasper as the "Best Trainer in Nashville."

19. She began training exclusively with Glasper and reported that he inappropriately touched her, asked her for photographs, and made inappropriate sexual comments about her body.

20. She only later learned that Glasper photographed her without consent in the body scan room, and she reported feeling profound shock and humiliation.

21. Similarly, Nichoel Ryner testified that she was shocked and devastated to learn that Glasper had taken unauthorized pictures of her and transferred private photographs from her phone to his.

22. Anna Leduc likewise testified that she observed Glasper "[c]ommenting on girls' bodies," "smack[ing] girls on the butt," and "[m]aking comments, winking, taking videos without consent."

23. Tjornhom stated that she was "horrified," "embarrassed," and "felt ashamed" and "uncomfortable in my own skin" after learning what Glasper had done.

24. Melanie Miller similarly asserted that Glasper inappropriately asked her to undress for a body scan and made a pornographic reference to her, among other inappropriate actions.

25. Bailey Payne-Jones testified that Glasper told her she needed to undress for the body scan, and then surreptitiously photographed her, making her feel shocked and surprised.

26. Omitted

27. Omitted

28. Paul Kellogg, Bigger Dream's fitness director, testified that even before the criminal charges came to light, he was aware of Glasper behaving inappropriately with female patrons, touching patrons inappropriately, and using "explicit" language.

29. Anthony Scott, a personal trainer and training manager, saw Glasper touching patrons and other employees inappropriately on multiple occasions and reported hearing complaints from employees and patrons about Glasper's sexually inappropriate conduct.

4

30. Tania Lopez, a fitness director, similarly testified that Glasper made sexual comments to and about patrons, wore clothing with inappropriate sexual messages on it, and touched clients inappropriately.

### D. Great American's coverage position and the Underlying Lawsuits.

31. Great American issued a commercial general liability policy number PAC 3360456 ("the Policy") to Bigger Dream, LLC ("Bigger Dream").

32. The Policy period was from 3/15/2021 to 3/15/2022.

33. Great American also issued a commercial umbrella ("the Umbrella") for the policy period of 3/15/21 to 3/15/22.

34. On or about February 24, 2022, Great American advised Bigger Dream that Great American would be affording a defense to Bigger Dream, in the Lawsuits, under a full Reservation of Rights.

35. In the letter, Great American further stated that "the $100,000 Limit of Liability provided under the ABUSE OR MOLESTATION COVERAGE FORM is the total amount available under policy PAC A00380403 to pay any settlements or judgments" arising out of Glasper's conduct.

36. Great American has also been affording a defense to Glasper.

37. Subsequently, counsel in the Lawsuit asked Great American for a copy of the Policy and clarification of Great American's coverage position.

38. Great American provided the Policy and a further explanation of the $100,000 limits in another letter.

39. Subsequently, defense counsel for Bigger Dream made a settlement offer to all Underlying Claimants for the $100,000 abuse sublimit.

40. Counsel for the Underlying Claimants declined the offer, asserting that they disagreed that the Policy limits the available coverage to $100,000.

41. This action for interpleader and declaration of rights followed.

## II. Standard Of Review

The standards governing summary judgment are well known. Put succinctly: (1) summary judgment is only appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law, Fed. R. Civ. P. 56(a); (2) the facts and inferences must be construed in favor of the nonmoving party, <u>Van Gorder v. Grand Trunk W. R.R., Inc.</u>, 509 F.3d 265, 268 (6th Cir. 2007); (3) the Court does not weigh the evidence, or judge the credibility of witnesses when ruling on the motion, <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986); and (4) the mere existence of a scintilla of evidence in support of the nonmoving party's position

is insufficient to survive summary judgment, Rodgers v. Banks, 344 F.3d 587, 595 (6th Cir. 2003). Furthermore, "[t]he standard of review for cross-motions for summary judgment does not differ from the standard applied when a motion is filed by only one party to the litigation." Ferro Corp. v. Cookson Group, PLC, 585 F.3d 946, 949 (6th Cir. 2009).

### III. Analysis

#### A. Declaratory Judgment

The parties agree that this Court should exercise its discretion and resolve the insurance policy disputes. (Doc. No. 33 at 1 and 3). It is settled law that the Declaratory Judgment Act, 28 U.S.C. § 2201, "confer[s] on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." Wilton v. Seven Falls Co., 515 U.S. 277, 286 (1995). In considering whether a district court should exercise its discretion, the Sixth Circuit has traditionally focused on five factors:

(1) whether the declaratory action would settle the controversy;
(2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;
(3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for res judicata";
(4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and
(5) whether there is an alternative remedy which is better or more effective.

Grand Trunk W. R.R. Co. v. Consol. Rail Co., 746 F.2d 323, 326 (6th Cir. 1984). Applying those factors, the Court agrees that this case is well-suited for declaratory judgment.

The first and second Grand Trunk factors support a declaratory judgment. The parties have an "independent dispute" over the coverage of insurance policies, and resolution will facilitate litigation of the female victims' lawsuits by resolving questions about whether the insurance coverage is available to Bigger Dream and Glasper, as well as if Great American is obligated to defend Bigger Dream and/or Glasper. Great American's liability is an independent dispute between it, Bigger Dream and Glasper. An interpretation of the insurance policies will finally

6

resolve that dispute. The third Grand Trunk factor, whether Great American is seeking declaratory relief for "procedural fencing" or to win a race for res judicata, does not arise here, as all parties request declaratory judgment. Indeed, the Court can identify no procedural advantage that would accrue to one party or another in granting declaratory judgment. The Sixth Circuit uses three subfactors to evaluate the fourth Grand Trunk factor, including:

> (1) whether the underlying factual issues are important to an informed resolution of the case;
> (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
> (3) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

Bituminous Cas. Corp. v. J & L Lumber Co., 373 F.3d 807, 814-15 (6th Cir. 2004) (citing Scottsdale Ins. Co. v. Roumph, 211 F.3d 964, 968 (6th Cir. 2000)). There is no risk here that federal jurisdiction over the interpretation of a commercial insurance contract will create any friction with state courts. Rather, the granting of declaratory judgment would reduce friction, as it would allow the stalled state-level claims to go forward. Finally, the fifth Grand Trunk factor that examines "whether there is an alternative remedy which is better or more effective" than the requested declaratory relief, Grand Trunk, 746 F.2d at 326, is satisfied because the parties agree declaratory judgment is the best method to resolve the insurance coverage dispute. Accordingly, the Court will exercise its jurisdiction to grant declaratory judgment. 28 U.S.C. § 2201(a).

## B. Insurance Contracts and Coverage

### 1. Tennessee Contract Interpretation

"Tennessee law is clear that questions regarding the extent of insurance coverage present issues of law involving the interpretation of contractual language." Garrison v. Bickford, 377 S.W.3d 659, 663 (Tenn. 2012) (citations omitted). Under Tennessee law, "[i]nsurance contracts are subject to the same rules of construction as contracts generally[.]" Clark v. Sputniks, LLC, 368 S.W.3d 431, 441 (Tenn. 2012) (internal quotation marks and citation omitted). "The cardinal

rule for interpretation of contracts is to ascertain the intention of the parties and to give effect to that intention, consistent with legal principles." Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc., 521 S.W.2d 578, 580 (Tenn. 1975). "If the language of the contract is clear and unambiguous," the Court will determine the parties' intent from the four corners of the contract by interpreting the contract "according to its plain terms as written" and "giv[ing] reasonable meaning to all of the provisions of the agreement, without rendering portions of it neutralized or without effect." Maggart v. Almany Realtors Inc., 259 S.W.3d 700, 704 (Tenn. 2008) (citations omitted).

To determine the intent of the parties, the Court "does not attempt to ascertain the parties' state of mind at the time the contract was executed, but rather their intentions as actually embodied and expressed in the contract as written." Rainey v. Stangell, 836 S.W. 2d 117, 119 (Tenn. Ct. App. 1992). "However, on occasion, a contractual provision may be susceptible to more than one reasonable interpretation, rendering the terms of the contract ambiguous." Maggart, 259 S.W.3d at 704 (citing Planters Gin Co. v. Fed. Compress & Warehouse Co., 78 S.W.3d 885, 890 (Tenn. 2002)); Tata v. Nichols, 848 S.W.2d 649, 650 (Tenn. 1993). Whether a contractual provision "is ambiguous, and therefore requires interpretation or construction, is a question of law to be decided by the court[.]" Stonebridge Life Ins. Co. v. Horne, No. W2012-00515-COA, 2012 WL 5870386, at *4-*5 (Tenn. Ct. App. Nov. 21, 2012) (quoting 16 Samuel Williston & Richard A. Lord, A Treatise on the Law of Contracts § 49:17 (4th ed. 2003)).

2. **"Abuse"**

The critical insurance contract language at issue is not disputed or ambiguous. The Abuse and Molestation Coverage Form states:

### ABUSE OR MOLESTATION COVERAGE FORM

1. **Insuring Agreement**

    **a.**    We will pay those sums the Insured becomes legally obligated to pay as "damages" because of "abuse" to which this insurance applies.

            We will have the right and duty to defend the Insured against any "suit" seeking those "damages." However, we will have no duty to defend the Insured against any claim or "suit" seeking "damages" because of "abuse" to which this insurance does not apply. We may, at our discretion, investigate any actual, threatened, or alleged "abuse" and settle any claim or "suit" that may result. But:

            **(1)**    the amount we will pay for "damages" is limited as described in **SECTION IV - LIMITS OF INSURANCE** of this Coverage Form; and

            **(2)**    our right and duty to defend end when we have used up the applicable Limit of Insurance in the payment of judgments, or settlements.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under this Coverage Form.

* * *

## SECTION IV - LIMITS OF INSURANCE

**2.**    The Aggregate Limit shown in the Abuse or Molestation Coverage Part Declarations is the most we will pay for the sum of all "damages" under this Abuse or Molestation Coverage Part.

**3.**    Subject to **2.**, the Each Abuse Limit is the most we will pay for the sum of all "damages" because of all injury arising out of all "abuse" by any one person

* * *

## SECTION VI – DEFINITIONS

**1.**    **"Abuse"** means:

    **a.**    any actual, threatened, or alleged act, error, omission, conduct, or misconduct, that a claim or "suit" alleges to be, or to constitute, any form of abuse (including, but not limited to, elder abuse, child abuse, patient abuse, or abuse o f a dependent person) under any applicable state or federal statute or regulation; and

    **b.**    any actual, threatened, or alleged act, error, omission, conduct, or misconduct, of one or more of the following kinds:

        **(1)**    sexual behavior, sexual conduct or misconduct, sexual assault, sexual battery, sexual abuse, or sexual molestation, o f or directed at a person;

        **(2)**    non-sexual assault, non-sexual battery, or non-sexual abuse, directed at a person; and

        **(3)**    any:

            **(i)**    employment;

9

> > > **(ii)** investigation;
> >
> > **(iii)** supervision;
> >
> > **(iv)** reporting to proper authorities, or failure to so report; or
> >
> > **(v)** retention in employment;
>
> > of any person committing conduct or misconduct described in **b.(1)** or **b.(2)**; or
>
> > > **(vi)** referral of a patient, student, parishioner, client, or person, to any other person whose conduct or misconduct is described in **a.**, **b.(1)**, or **b.(2)**.
>
> Conduct or misconduct described in **b.(1)** through **b.(3)** constitutes "abuse" within the meaning of this definition regardless of whether or not it is alleged to be negligent, reckless, knowing, intentional, fraudulent, oppressive, malicious, or otherwise.

(Doc. No. 1-1 at 181, 187, 189-90) (Abuse or Molestation Coverage Form 85 65).

The Abuse or Molestation Coverage Form 85-65 covers "any form of abuse." "Abuse" is defined to "include conduct that is prohibited "under any applicable state or federal statute or regulation," such as elder abuse, child abuse, patient abuse or abuse of a dependent person. Abuse also covers conduct that is not illegal and conduct whether sexual or non-sexual. In clear and simple words, Great American and Bigger Dream agreed that "abuse" also means "any actual, threatened or alleged act, error, omission, conduct, or misconduct of sexual behavior, sexual conduct or misconduct, sexual assault, sexual battery, sexual abuse or sexual molestation directed to a person. The Abuse or Molestation Coverage also includes any non-sexual assault, non-sexual battery or non-sexual abuse to a person. By repeatedly using the words "sexual" and "non-sexual" in the definition of "abuse," the parties signified their intent that "abuse" is all inclusive, including sexual behavior—conduct toward females that reflect erotic and carnal motivations—and non-sexual activity. This distinction explains why Great American did not use the "of any kind" phrase to describe the requisite motivation. (Doc. No. 33 at 5). Defendants' argument that abuse implies some type of "physical act or direct interactions" is inconsistent with the parties' all inclusive

10

intent and is not supported by any words in the Abuse or Molestation Coverage. In short, "abuse" includes sexual and non-sexual behavior or conduct of any kind directed to a person.

The Court concludes that the plain unambiguous definition of "abuse" in the Abuse or Molestation Coverage includes the conduct alleged by the female victims against Glasper and Bigger Dream in the state court litigation. It is undisputed that the female victims allege sexual misconduct by Glasper and that Glasper pled guilty to sexual misconduct. The discovery in the state cases identifies Glasper's abusive sexual conduct. This includes: inappropriate touching females, sexual comments about females, pictures of females while they were undressing, smacking females on the butt, and asking them to undress for a body scan, during which he took their picture. Glasper's conduct clearly supported his guilty plea to taking photographs "for the purpose of sexual arousal or gratification." Tenn. Code Ann. § 39-13-605. Glasper's erotic and carnal behavior towards females constitute "abuse" under the Abuse or Molestation Coverage.

The plain unambiguous language in the Great American policies make the Abuse or Molestation Coverage Form the only available applicable policy for the female victims' state court case. Section IV – Limits of Insurance limits Great American's financial obligation to $100,000.00.

### 3. Other Great American Policies

The Commercial General Liability Coverage Form and the Professional Liability Insurance Coverage Form do not apply because claims alleging "abuse" are controlled solely by the Abuse or Molestation Coverage Form. The Umbrella Policy does not apply because it specifically excludes claims alleging "abuse." Having concluded that the Abuse or Molestation Coverage controls, the Court easily concludes that the Commercial General Liability Coverage, Professional Liability Coverage and the Umbrella Policy do not apply to the female victims' lawsuits. All three

have plain and simple language that excludes claims alleging "abuse." (See Doc. No. 1-1 at 195, 213; Doc. No. 1-2 at 40).

### C. Duty to Defend Glasper

Great American is not required to provide a defense for Glasper in the female victims' state court cases. This conclusion is supported by the plain and clear language of "exclusions" in the Abuse or Molestation Coverage. Section 1 of the Abuse or Molestation Coverage reflects the agreement to exclude insurance coverage in specific circumstances. It reads:

> This insurance does not apply to any:
>
> a. "Damages" because of any injury, loss, harm, costs, or expense, expected or intended from the standpoint of the Insured (Intentional Act Exclusion).
>
> b. "Damages" because of any liability arising out of any criminal or fraudulent act committed by or at the direction of the Insured. (Criminal Act Exclusion).

(Doc. No. 1-1 at 182). Applying the rules of contract interpretation to this language, the Court concludes that both relieve Great American from any duty to provide insurance coverage for or duty to defend Glasper.

First, based upon the undisputed facts, the Intentional Act Exclusion applies to Glasper because, from his perspective, he "expected or intended" harm to the female by misusing their personal pictures and certainly by taking their photographs while the females undressed. He acted intentionally, surreptitiously and with carnal motives when he did both. This is true because he expected and knew the females would not otherwise consent to his behavior. This factual distinction separates this case from Tenn. Farmers Mut. Ins. Co. v. Evans, 814 S.W.2d 49, 55 (Tenn. 1991), relied upon by Defendants. After all, Glasper pled guilty to photographing women for sexual arousal or gratification. (Doc. No. 32 at ¶6).

Second, the Criminal Act Exclusion is applicable based on Glasper's guilty plea to Tenn. Code Ann. § 39-13-615. There are no words in the Criminal Exclusion that require that Glasper act intentionally. Defendants misread the Criminal Act Exclusion when they argue damages must arise from Glasper's "expected or intended" conduct because that language is not in the Criminal Exclusion. Here, Glasper has pleaded guilty to violations of § 39-13-605. The damage he has suffered in the form of requiring a defense in the female victims' lawsuit arose out of criminal acts he committed, bringing him within the Criminal Acts Exclusion.

Additionally, the Abuse or Molestation Coverage extends to include any claims of abuse arising from an employment relationship, failure to supervise or negligent retention, which covers Bigger Dream's relationship with Glasper. (Doc. No. 1-1 at 189).

Great American has no duty to defend Glasper.

## IV. Conclusion

Having analyzed the insurance policies, the Court will enter an order granting Great American's motion for summary judgment and denying Defendants' motion for summary judgment. The Court will also enter an appropriate declaratory judgment.

An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR
UNITED STATES DISTRICT JUDGE